**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| General Marketing Services, Inc.,<br><br>                              Plaintiff,<br><br>v.<br><br>American Motorsports, Inc.,<br>Innovation Management, Inc., and<br>David Zehr<br><br>                              Defendants. | **ORDER**<br><br>Civil No. 02-671 (MJD/JGL) |

Gary W. Hoch, Meagher & Geer, PLLP, Counsel for Plaintiff.

George Sistevaris, Haller & Colvin, P.C.; Michael J. Pape, Kinney & Lange, Counsel for Defendants.

## I.     INTRODUCTION

This is a contractual dispute between Plaintiff General Marketing Services, Inc. ("GMS"), a Minnesota corporation, and Defendants American Motorsports, Inc. ("AMI"), Innovation Management, Inc. ("IMI"), and David Zehr—all residents of Indiana. IMI is the corporate parent of AMI, and Zehr is an IMI employee. Defendants contracted with Plaintiff to provide data services, Defendants were displeased with Plaintiff's performance and refused payment, and Plaintiff filed this suit.

On March 4, 2003, this Court granted Defendants' petition to compel arbitration and stay this matter during the parties' participation in those proceedings. Plaintiff's Motion for Partial Summary Judgment [Docket No. 9] was resolved in arbitration, and the parties have stipulated that Defendant AMI's

motion to strike the affidavit of attorney Eggimann [Docket No. 25] has been rendered moot. As such, this Court's analysis is limited to Defendant Zehr's Motion for Summary Judgment [Docket No. 21].

## II.    FACTUAL BACKGROUND

Defendant AMI, which owns an organization of fans of motor sports racing, sought Plaintiff's marketing services in 1998. The parties signed a Service Agreement effective from May 6, 1999, to at least April 13, 2002. The agreement involved Plaintiff's development and maintenance of database and credit card processing services, maintenance of a data center, initial fulfillment of membership to club members, and maintenance of customer services. Plaintiff argues that in the contract, AMI agreed to compensate Plaintiff (1) in advance for start-up costs, (2) within 30 days of receiving an invoice from Plaintiff of fixed costs, and (3) within 15 days of receiving an invoice of variable costs from Plaintiff.

Plaintiff contends that it performed all services required under the contract between May 1999 and November 2000, and their submitted invoices for that period totaled $702,700.47. But Plaintiff asserts that, to date, it has only received $385,589.28, with an unpaid amount totaling $317,111.19. Plaintiff's primary contention is that AMI "has made no objection to the any of the unpaid invoices," and that interest has continued to accrue.

Plaintiff asserts that Defendant Zehr, an AMI employee, made statements that amounted to personal guarantees for AMI's debts, but Zehr denies making any such statement or guarantee. Zehr now moves for summary judgment on all claims against him.

## III.  DISCUSSION

### A.  Summary Judgment Standard

When considering motions for summary judgment, a court must determine "whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Palesch v. Mo. Comm'n on Human Rights, 233 F.3d 560, 565 (8th Cir. 2000); see Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that there is no disputed issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

For these purposes, "[t]he non-moving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record," though "[t]he non-moving party may not merely rest upon allegations or denials in its pleadings, but must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial." Palesch, 233 F.3d at 565-66 (citations omitted). As such, a "nonmovant must present more than a scintilla of evidence and must advance specific facts to create a genuine issue of material fact for trial." Naucke v. City of Park Hills, 284 F.3d 923, 927 (8th Cir. 2002). Further, a

nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts and where the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Kiemele v. Soo Line R. Co., 93 F.3d 472, 474 (8th Cir. 1996) (quotation omitted).

### B.  Zehr's Motion for Summary Judgment

Defendant David Zehr filed a motion for summary judgment regarding those claims against him, personally, which assert misrepresentation, promissory estoppel, breach of personal guarantee, and unjust enrichment. Zehr argues that he is not a proper defendant in the suit, as an employee who has no ownership interest in either of the co-defendants, AMI or IMI. The record contains no evidence that Zehr has ever been a shareholder or officer of either IMI or AMI. Further, the record contains no evidence that neither AMI nor IMI has ever given Zehr any bonuses, commission, or incentive pay—either before or after the matter in dispute.

All claims against Zehr turn on four alleged oral personal guarantees for AMI's debts. In the first alleged statement, purportedly made in January 1999 (more than three months before the contract) in Fort Wayne, Indiana, Zehr is alleged to have "represented that he and his family were funding AMI." But Zehr argues he could not have made any such personal guarantee because on that date, he was in Harbor Springs, Michigan, for an unrelated matter. At oral argument,

Plaintiff's counsel conceded that Plaintiff's recollection of the January 1999 meeting was "in error," and that Zehr was not, in fact, at that meeting.

Plaintiff next alleges that in May 1999, Zehr made statements in Brooklyn Park, Minnesota, allegedly assuring Plaintiff that "I'm not going to leave you hanging out there," that "[y]ou will get your money in a timely fashion," that "General Marketing would be paid by AMT, and that the Zehr family was funding AMI." But Zehr denies that the Brooklyn Park meetings involved any discussion of personal guarantees; regardless, such discussions would have been unlikely since AMI was—at that point—current on all of Plaintiff's invoices.

Zehr's third personal guarantee in dispute was an alleged July 1999 statement in Brooklyn Park, Minnesota, that "I will not leave you to hang out to dry. I will always make this square." But Zehr denies that payment was discussed during those meetings; rather, the focus was on the accuracy of Plaintiff's data gathering and reporting. Even assuming the alleged statements *were* made, Zehr argues that those particular statements do not constitute a personal guarantee, but that the alleged statements clearly connoted that **AMI** would take care of the invoices.

Lastly, Zehr is alleged to have made a statement in September 2000 that "specifically guaranteed that he would continue funding AMI." Zehr denies ever making a promise that he would be personally liable on any of AMI's debts.

5

Zehr's motion for summary judgment is based primarily on the statute of frauds, as well as common-law defenses to the claims of misrepresentation, promissory estoppel, and unjust enrichment.

### 1. Statute of Frauds

Regarding Plaintiff's claim of breach of personal guarantee, Zehr argues that because no document exists to substantiate his alleged contract with Plaintiff, its claims against him are precluded by Minnesota's Statute of Frauds, which states that

> No action shall be maintained, in either of the following cases, upon any agreement, unless such agreement, or some note or memorandum thereof, expressing the consideration, is in writing, and subscribed by the party charged therewith:
>
> . . .
>
> (2) Every special promise to answer for the debt, default or doings of another . . . .

MINN. STAT. § 513.01. This section has long excluded oral promises regarding merchants' debts. See, e.g., Askier v. Donnelly, 195 N.W. 494 (Minn. 1923) (holding that plaintiff seeking to enforce a promise to pay for another's debt cannot recover without a "writing expressing the consideration, and signed by the promisor").

Zehr notes that even if he had made such oral statements (which he denies), they would be *collateral* promises excluded by the statute of frauds.

Esselman v. Production Credit Ass'n of St. Cloud, 380 N.W.2d 183, 187 (Minn. Ct. App. 1986) ("A collateral promise is not enforceable under the Statute of Frauds unless there is a writing."). "Whether a promise is original or collateral depends upon what the parties mutually understood the promise to be." Id. A collateral promise is "one that provides no (direct) benefit to the promisor." Allison v. Best Recycling & Disposal, Inc., 565 N.W.2d 437, 438 (Minn. Ct. App. 1997). In contrast, original promises must directly or primarily benefit the promisor. Id.; see J.J. Brooksbank Co. v. Am. Motors Corp., 184 N.W.2d 796, 800 (Minn. 1971) (finding evidence that defendants were more than guarantors and noting that jury could have reasonably found original promise where defendant "had a very definite interest in the entire transaction, notwithstanding their claim that the profits belonged to" another). Minnesota courts have consistently held that promises to cover the goods of others must conform with the statute of frauds. E.g., Askier, 195 N.W. at 494 (holding statement "I will see that you get your pay" not enforceable under statute of frauds); Froelich v. Aspenal, Inc., 369 N.W.2d 37, 39 (Minn. Ct. App. 1985) (holding that, for purposes of promissory estoppel, agent's statement "I will personally see that you get paid" was insufficient to impose liability for principal's debts).

Because Zehr would have received no benefit from the alleged promises, they were collateral promises that require a writing. Esselman, 380 N.W.2d at 186-87 (holding that writings are required for third-party promises because

7

without a writing, courts are unable to resolve factual conflicts, and promisees in such arrangements may be tempted to enlarge the scope of the promise). Without such a writing, Plaintiff now seeks to "torture mere words of encouragement into an absolute promise." Esselman, 380 N.W.2d at 187.

Plaintiff contends that even if Zehr's alleged statements were interpreted to be collateral promises, the statute of frauds does not apply because Plaintiff relied on those promises and fully performed as a result. See Roaderick v. Lull Eng'g Co., 208 N.W.2d 761, 764 (Minn. 1973) (holding that even though statute of frauds excluded contract claim, quantum meruit claim remains); Granite Falls Mun. Hosp. v. Cole, 133 N.W.2d 496, 499 n.1 (Minn. 1965) (noting, in dicta, that oral nature of agreement would not preclude contract action if services were rendered in reliance of promise). But Roaderick and Granite Falls are clearly distinguishable from the facts at bar.

The Roaderick plaintiff was an employee suing his employer for the reasonable value of his services provided pursuant to an unenforceable oral employment agreement, where Plaintiff's claims here involve the alleged promise of an agent to pay for the debts of his principal. Because of the intrinsic differences between the actions, Roaderick is inapplicable. Similarly, the Granite Falls court was not faced with the direct question of the enforceability of promises to pay for the debts of another, but its holding was instead limited to jurisdiction and venue, which are not in dispute here. Granite Falls, 133 N.W.2d at 499-500 &

8

n.1 (providing footnote hypothetical "if [reliance and services] were established" and supplying reasoning and holding on jurisdiction). As such, that court's footnote regarding hypothetical performance in reliance of a promise is dicta and is not binding precedent. <u>Vandenheuvel v. Wagner</u>, 690 N.W.2d 753, 756 (Minn. 2005) ("Because the issue presented in the instant case was not before the court in <u>Bucko</u>, the [cited] language . . . was dicta and is not binding precedent.")

Even viewing the facts in the light most favorable to Plaintiff, the record contains no documentation or other writing to substantiate Plaintiff's claim that Zehr made a *personal* guarantee, rather than speaking in his capacity as an agent. Because the statute of frauds requires a writing to substantiate personal guarantees, and because the record contains no such writing, summary judgment as to Plaintiff's breach-of-personal-guarantee claim is appropriate.

### 2. Misrepresentation, Promissory Estoppel, and Unjust Enrichment

Zehr next argues that even if the statute of frauds does not apply to the equitable claims of misrepresentation, promissory estoppel, and unjust enrichment, Plaintiff has nonetheless failed to provide evidence sufficient to support these claims. Because claims in equity do not require an enforceable contract, making the statute of frauds inapplicable to these claims, the following analysis is required.

### (a)  Misrepresentation

The pleadings do not specify whether Plaintiff's claims are for negligent or fraudulent misrepresentation. As such, both are analyzed here. To succeed in a claim for *negligent* misrepresentation, a plaintiff must show

> (1) a duty of reasonable care in conveying information; (2) breach of that duty by negligently giving false information;  (3) reasonable reliance on the misrepresentations, which reliance is the proximate cause of physical injury; and (4) damages.

Flynn v. Am. Home Prods. Corp., 627 N.W.2d 342, 350-51 (Minn. Ct. App. 2001) (citation omitted). Plaintiff's negligent misrepresentation claim must fail because the two parties are in adverse positions, where negligent misrepresentation cannot exist. See Smith v. Woodwind Homes, Inc., 605 N.W.2d 418, 424 (Minn. Ct. App. 2000) (holding that an essential element of negligent misrepresentation is "duty of care," which is not present where "adversarial parties negotiate at arm's length").

To succeed in a claim for *fraudulent* misrepresentation, a plaintiff must prove the following:

> (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffer pecuniary damage as a result of the reliance.

Id. at 349 (quoting Specialized Tours, Inc. v. Hagen, 392 N.W.2d 520, 532 (Minn. 1986)).

To support its claim of fraudulent misrepresentation, Plaintiff provides the text of only one alleged statement: "I will not leave you to hang out to dry. I will always make this square." This statement is insufficient to establish fraudulent misrepresentation as a matter of law.

The Minnesota Court of Appeals has held that the following statements were insufficient to demonstrate a personal promise, rather than a promise as an agent of a principal: "I will personally see that you get paid," and "if you don't take action against us, . . . Monday I'll give you $25,000 and then you'll have to wait a couple weeks and I'll give you another $25,000." Froelich v. Aspenal, Inc., 369 N.W.2d 37, 39, 40 (Minn. Ct. App. 1985). Rather, that court affirmed the trial court's findings that declarants made those statements in their capacities as agents for the defendant corporation. Id. at 40.

Here, even assuming that Zehr made the vague statements, "I will not leave you to hang out to dry" and "I will always make this square," Plaintiff provides no evidence to demonstrate that these statements were made as a personal guarantee, rather than in Zehr's capacity as an employee. See Froelich, 369 N.W.2d at 40; see also Ag Servs. of Am., Inc. v. Schroeder, 693 N.W.2d 227, 236 (Minn. Ct. App. 2005) (affirming trial court's denial of motion to add

11

misrepresentation claim because statement in record was vague and lacked requisite reliance).

Further, a claim for fraudulent misrepresentation must include a representation of a past or present event. <u>Davis v. Midwest Disc. Sec., Inc.</u>, 439 N.W.2d 383, 387 (Minn. Ct. App. 1989) (further holding that "[f]uture assurances . . . do not form the basis of a misrepresentation claim"). Here, each of Zehr's alleged statements involves a future promise that he will "make things square" or that he would not let Plaintiff "hang out to dry." Because these statements are forward-looking, they fail the first prong's requirement that the statement at issue involve a "past or existing material fact susceptible of knowledge." As such, Plaintiff's misrepresentation claim must fail.

Lastly, Plaintiff also fails to satisfy the second and third prongs of the <u>Flynn</u> test: that even taking as true that the statement was made, that Zehr knew of the falsity (or without knowing the veracity) of the statement or that Zehr intended to induce Plaintiff's reliance. See <u>Faribo Oil Co. v. Tatge Oil Co., Inc.</u>, 501 N.W.2d 699, 701-02 (Minn. Ct. App. 1993) (affirming summary judgment of misrepresentation claim because plaintiff failed to provide evidence to establish prima facie case of misrepresentation). Plaintiff provides no evidence that Zehr knew of the falsity of his promise for future performance—if such knowledge of a future promise can even exist—or that Zehr intended to induce Plaintiff's reliance on his promise.

In light of Plaintiff's failure to demonstrate a prima facie case of either a negligent- or fraudulent-misrepresentation claim, summary judgment is appropriate as a matter of law.

### (b)  **Promissory Estoppel**

Zehr next argues that summary judgment is similarly appropriate for Plaintiff's promissory estoppel claim. To determine whether promissory estoppel is present, a court must ask the following: "(1) Was there a clear and definite promise? (2) Did the promisor intend to induce reliance, and did such reliance occur? (3) Must the promise be enforced to prevent injustice?" Olson v. Synergistic Techs. Bus. Sys., Inc., 628 N.W.2d 142,152 (Minn. 2001). Said another way, promissory estoppel "implies a contract in law where none exists in fact," and is defined as

> A promise which the promisor should reasonably expect to induce action or forbearance . . . on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

Froelich v. Aspenal, Inc., 369 N.W.2d 37, 39 (Minn. Ct. App. 1985) (citations and quotations omitted). The presence of equitable or promissory estoppel may take an agreement outside of the statute of frauds because "promissory estoppel is employed to imply a contract in law where none in fact exists." Norwest Bank Minn., N.A. v. Midwestern Mach. Co., 481 N.W.2d 875, 880 (Minn. Ct. App. 1992).

13

As an agent of AMI, Zehr's statements do not automatically make him personally liable for the debts of his principal. Under Minnesota law, "a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract." Froelich, 369 N.W.2d at 39 (quotation omitted). More specifically, Zehr's alleged statements are remarkably similar to the Froelich agent's statement, "I will personally see that you get paid," which the Minnesota Court of Appeals held to be insufficient to apply promissory estoppel against him for his principal's debts. Further, the Minnesota Court of Appeals has held that the agent's statement that it would "stand behind" its employer was an unenforceable collateral promise, affirming the district court's conclusion that promissory estoppel was absent. Ass'n of Mill & Elevator Mut. Ins. Co. v. Barzen Int'l, Inc., 553 N.W.2d 446, 451 (Minn. Ct. App. 1996).

Plaintiff has presented no evidence to dispute that Zehr was, indeed, an AMI employee, and it is clear that Zehr's statements (assuming they were made) did not give rise to promissory estoppel but instead were unenforceable as collateral promises. Consequently, summary judgment on Plaintiff's promissory estoppel claim is appropriate as a matter of law.

### (c)   Unjust Enrichment

Zehr lastly argues that Plaintiff's unjust enrichment claim against him should be dismissed. To succeed in a claim of unjust enrichment, a claimant must show "that another party knowingly received something of value to which he was

not entitled, and that the circumstances are such that it would be unjust for that person to retain the benefit." Schumacher v. Schumacher, 627 N.W.2d 725, 729 (Minn. Ct. App. 2001).

The record contains no evidence that Zehr received anything of value as a result of the alleged promises. Plaintiff argues that Zehr was unjustly enriched through AMI's continuing to stay in business, thereby continuing Zehr's employment. But Plaintiff provides no support that this remote benefit is sufficient to demonstrate a prima facie case for the equitable claim of unjust enrichment.

The record contains no evidence that Zehr was a shareholder or officer of AMI or INI, nor does any evidence show that Zehr ever received incentive pay or bonus commission from either of his co-defendants. Because the remedy to unjust enrichment is returning any benefits received, and because no evidence shows that Zehr has received any such benefit, Plaintiff's "failure to establish that [movant] received something of value it was not entitled to is dispositive of [non-movant's] unjust enrichment claim." Guinness Import Co. v. Mark VII Distribs., Inc., 153 F.3d 607, 613 (8th Cir. 1998) (relying upon Southtown Plumbing, Inc. v. Har-Ned Lumber Co., Inc., 493 N.W.2d 137, 140 (Minn. Ct. App. 1992)).

Further, even if Zehr *had* benefited from Plaintiff's transactions with AMI, a claim of unjust enrichment requires proof that Plaintiff conferred those benefits "unknowingly or unwillingly." Holmes v. Torguson, 41 F.3d 1251, 1256 (8th Cir. 1994) (quoting Galante v. Oz, Inc., 379 N.W.2d 723, 726 (Minn. Ct. App. 1986)).

The record demonstrates that Plaintiff was fully aware of the benefits and services that it provided to AMI and its employees.

The record contains no evidence that Zehr received anything of value from his alleged statements to Plaintiff, and any conceivable benefit through his continued employment or AMI's continuing to be in business is tangential, at best. Further, AMI did not provide any benefits "unknowingly or unwillingly," as required by Minnesota law. As such, summary judgment of Plaintiff's unjust enrichment claim, like its other claims against Zehr, is properly granted.

Based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Zehr's Motion for Summary Judgment [Docket No. 21], is **GRANTED**.

2. Plaintiff's Motion for Partial Summary Judgment [Docket No. 9] is **DENIED AS MOOT** because it has been resolved through arbitration.

3. Defendant's Motion to Strike [Docket No. 25] is **DENIED AS MOOT.**

Dated: June 23, 2005                         <u>s/ Michael J. Davis</u>
                                             Judge Michael J. Davis
                                             United States District Court